**24-6755**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

LUIS CARDENAS-ORNELAS,
Plaintiff-Appellee,

v.

WICKHAM, et al.,
Defendants-Appellants.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA,
D.C. No. 2:21-cv-00030-ART-MDC

---

## DEFENDANT'S-APPELLANT'S OPENING BRIEF

---

Respectfully submitted by:
AARON D. FORD
Attorney General
CHRIS DAVIS (Nevada Bar No. 6616)
Senior Deputy Attorney General
Office of the Attorney General, State of Nevada
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-9252 (phone)
cwdavis@ag.nv.gov
*Attorneys for Defendants-Appellants*
*Jessie Brightwell, Charles Daniels,*
*Calvin Johnson, Timothy Johnson,*
*Robert Owens, Gary Piccinini, Manuel Portillo,*
*Timothy Struck, and Harold Wickham*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................................ii

TABLE OF AUTHORITIES ..............................................................iv

I.    INTRODUCTION............................................................................1

II.    JURISDICTIONAL STATEMENT ...............................................4

III.   STATEMENT OF THE ISSUES PRESENTED............................4

IV.   STATEMENT OF CASE AND PROCEDURAL HISTORY ...........6

      A.    NDOC Medical Director Establishes COVID-19
            Protocols to Combat an Unprecedented Global
            Pandemic ...............................................................................6

      B.    Cardenas-Ornelas's Unit Is Properly Quarantined Due
            to Contact with COVID-19 for Forty (40) Days.....................8

      C.    Cardenas-Ornelas's Unit Is Properly Quarantined Due
            to Contact with COVID-19 for Seven (7) Months..................9

      D.    Despite the Lack of Any Constitutional Violation,
            Cardenas-Ornelas Wrongly Files a Complaint with the
            District Court ......................................................................12

      E.    As Safety Permitted, COVID-19 Restrictions Are Lifted.....13

      F.    The District Court Wrongly Denies Warden Johnson's
            Motion for Summary Judgment............................................14

V.    STANDARD OF REVIEW ..........................................................14

VI.   SUMMARY OF ARGUMENT.....................................................16

VII.   ARGUMENTS ...................................................................... 17

    A.   Warden Johnson Is Entitled to Qualified Immunity under Established Precedent .................................... 17

    B.   The District Court Erred by Considering  Facts that Occurred After Cardenas-Ornelas Submitted His Complaint ....................................................................... 19

    C.   Warden Johnson is Entitled to Qualified Immunity Because He Did *NOT* Violate the Eighth Amendment ........ 23

    D.   Warden Johnson Is Entitled to Qualified Immunity Because He Did *NOT* Violate Cardenas-Ornelas's Right to Equal Protection ............................................ 32

    E.   Warden Johnson Did *NOT* Personally Participate in Any Constitutional Violation ................................. 36

    F.   Cardenas-Ornelas Failed to Meet His Burden of Establishing a Violation of Clearly Established Law, Beyond Debate,  Required to Overcome Qualified Immunity ...................................................................... 37

    G.   The District Court and this Court Lack Jurisdiction to Consider Cardenas-Ornelas's State Law Claims ................ 40

VIII.   CONCLUSION ..................................................................... 43

CERTIFICATE OF COMPLIANCE .......................................... 44

CERTIFICATE OF SERVICE .................................................... 45

iii

## TABLE OF AUTHORITIES

## CASES

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir. 2001)................................................................................14

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)................................................17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................34, 36

*Behrens v. Pelletier*, 516 U.S. 299 (1996) ...............................................4

*Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868 (6th Cir. 2024) ........21

*Bruce v. Ylst*, 351 F.3d 1283 (9th Cir. 2003).........................................24

*Burnham v. Pub. Employees' Ret. Sys.*, 208 Cal. App. 4th 1576, 146 Cal. Rptr. 3d 607 (2012)................................................................42

*Carley v. Aranas*, 103 F.4th 653 (9th Cir. 2024)...............................38, 39

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).......................................16

*City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9 (2021).....................18

*Craig v. Donnelly*, 135 Nev. 37, 439 P.3d 413 (Nev. App. 2019) ...........40

*Cunningham v. Gates*, 229 F.3d 1271 (9th Cir. 2000)...........................37

*Curley v. City of N. Las Vegas*, 772 F.3d 629 (9th Cir. 2014)................14

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) ..............................15

*Doe v. Regents of the Univ. of California*, 891 F.3d 1147 (9th Cir. 2018)........................................................................................4

*Edelman v. Jordan*, 415 U.S. 651 (1974) ..............................................40

iv

*El-Khali v. Usen*, Case No. 21-1140021, 2021 WL 4621828 (6th Cir. Oct. 7, 2021) ................................................................20

*Farmer v. Brennan*, 511 U.S. 825 (1994) ....................................23, 24, 27

*Giraldo v. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 85 Cal. Rptr. 3d 371 (2008) ...............................................................42

*Hernandez v. Campbell*, 204 F.3d 861 (9th Cir. 2000) ...........................42

*Hirst v. Gertzen*, 676 F.2d 1252 (9th Cir. 1982)...................................41

*Howard v. City of Coos Bay*, 871 F.3d 1032 (9th Cir. 2017)..................21

*Hudson v. Palmer*, 468 U.S. 517 (1984) ..................................................24

*In re Brazier Forest Products, Inc.*, 921 F.2d 221 (9th Cir. 1990) ..........16

*In re Candelaria*, 126 Nev. 408, 245 P.3d 518 (2010)............................42

*Jackson v. Fong*, 870 F.3d 928 (9th Cir. 2017) ......................................21

*Katzberg v. Regents of Univ. of California*, 58 P.3d 339 (Cal. 2002)......42

*Kisela v. Hughes*, 584 U.S. 100 (2018) ............................................18, 38

*Mack v. Williams*, 138 Nev. Adv. Op. 86, 522 P.3d 434 (2022) .............42

*McCleskey v. Kemp*, 481 U.S. 279 (1987) ...............................................33

*Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975 (9th Cir. 2006).................................................................................15

*Naovarath v. State*, 105 Nev. 525, 779 P.2d 944 (1989) ........................42

*Norbert v. City & Cnty. of San Francisco*, 10 F.4th 918 (9th Cir. 2021)............................................ 25, 26, 27, 29, 35, 38, 39

*Norwood v. Vance*, 591 F.3d 1062 (9th Cir. 2010) .... 27, 28, 29, 30, 31, 32

v

*O'Connor v. State of Nev.*, 686 F.2d 749 (9th Cir. 1982)..........................41

*Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984) .....41

*Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014)....................................36

*Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554
    U.S. 316 (2008)....................................................................................42

*Reichle v. Howards*, 566 U.S. 658 (2012) ..........................................17, 18

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir.
    2006)....................................................................................................19

*Rhodes v. Robinson*, 621 F.3d 1002, 1007 (9th Cir. 2010).....................21

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021) ....................................18

*River City Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d
    1458 (9th Cir. 1992) ...........................................................................15

*Saddozai v. Davis*, 35 F.4th 705 (9th Cir. 2022) ....................................21

*Seaplane Adventures, LLC v. Cnty. of Marin*, 71 F.4th 724 (9th
    Cir. 2023).................................................................... 32, 33, 34, 35, 39

*SmileDirectClub, LLC v. Tippins,* 31 F.4th 1110 (9th Cir. 2022) ..........33

*Triplett v. Banks*, Case No. 19-60770, 2021 WL 5444751 (5th Cir.
    Nov. 19, 2021) ....................................................................................21

*Turner v. Safley*, 482 U.S. 78 (1987) .......................................................33

*Wagner v. Prof'l Engineers in California Gov't*, 354 F.3d 1036 (9th
    Cir. 2004).......................................................................................19, 20

*Wilkerson v. Maggio*, 703 F.2d 909 (5th Cir. 1983) ................................25

*Williams v. Wood*, Case No. 06–55052, 223 Fed. App'x 670 (9th Cir. 2007) ........................................................................24

## <u>STATUTES</u>

28 U.S.C. § 1291 ........................................................................4

42. U.S.C. § 1983 .......................................................... 20, 21, 36

NRS 41.031 .................................................................. 40, 41, 42

NRS 41.0337 ................................................................ 40, 41, 42

## <u>RULES</u>

9th Cir. R. 32-1 ......................................................................44

Fed. R. App. P. 32 ...................................................................44

Fed. R. App. P. 4 .......................................................................4

Fed. R. Civ. P 15 ............................................................... 19, 20

Fed. R. Civ. P. 56 ....................................................................14

## <u>REGULATIONS</u>

NDOC AR 525 .........................................................................26

NDOC AR 854 .........................................................................26

## <u>TREATISES</u>

Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1051 (4th ed. April 2021 Update) ..................................20

## I. INTRODUCTION

The district court erred when denying the motion for summary judgment of Defendant-Appellant Calvin Johnson, a warden with the Nevada Department of Corrections (NDOC). No case has held that the Constitution requires offenders, such as Plaintiff-Appellee Luis Cardenas-Ornelas, to be released from quarantine for purposes of outdoor exercise, when the quarantine was instituted for safety and security reasons during the midst of an unprecedented global pandemic. Despite the lack of any clearly established constitutional requirement under these specific and unique facts, the district court wrongly denied Warden Johnson's motion for summary judgment asserting qualified immunity.

Contrary to the district court's erroneous assumptions, Warden Johnson did not violate Cardenas-Ornelas's constitutional rights when he was properly quarantined, which justifiably restricted Cardenas-Ornelas's ability to exercise outdoors to prevent the spread of COVID-19. The conditions of Cardenas-Ornelas's quarantine were equally applied to all offenders at High Desert State Prison (HDSP). NDOC was properly responding to the unprecedented COVID-19 pandemic by implementing policies adopted by NDOC's Medical Director for combating COVID-19, based on CDC guidance, which policies Warden Johnson was required to follow.

1

Contrary to the district court's conclusion, this Court has refused to recognize a right to outdoor exercise under the Eighth Amendment. This Court has repeatedly held that any right to exercise can be satisfied by a prisoner exercising in his cell or by meaningful recreation, such as the affirmative program of training and rehabilitation provided to Cardenas-Ornelas for sixteen hours each week. Based on these repeated holdings, it is no surprise that this Court has also held that outdoor exercise need not be provided when responding to a genuine emergency, such as COVID-19, even when exercise is restricted for years.

Cardenas-Ornela's equal protection claim fairs no better. Cardenas-Ornelas was not treated differently from any similarly situated offenders. The undisputed evidence establishes that all offenders, including Cardenas-Ornelas, were restricted from accessing the yard when any offender in that unit had contracted COVID-19. Moreover, this Court has held that officials act reasonably, by restricting activities not defined as essential, such as outdoor exercise, in order to prevent the spread of a novel disease, such as COVID-19, and that courts should not second guess official's decisions when doing so. Judicial deference is especially appropriate in this case considering the unprecedented nature of the COVID-19 pandemic.

2

Cardenas-Ornelas's Eighth and Fourteenth Amendment claims are therefore barred by qualified immunity. Warden Johnson did not violate any of Cardenas-Ornelas's rights, much less a right clearly established beyond debate, which is required to overcome qualified immunity. Considering the unique nature of the COVID-19 pandemic and the lack of any precedent establishing that Warden Johnson's personal actions violated the Constitution, qualified immunity protects Warden Johnson because no reasonable official would have understood that any constitutional right was violated.

Finally, both this Court and the district court lack jurisdiction to consider Cardenas-Ornelas's State law claims. Nevada has not waived its sovereign immunity protected by the Eleventh Amendment, and under Nevada law, Cardenas-Ornelas cannot pursue his State law claims against Warden Johnson without naming the State of Nevada.

The district court therefore erred when denying Warden Johnson's motion for summary judgment because he is protected by qualified immunity as to the federal claims and the Eleventh Amendment as to the state law claims. This Court should therefore reverse the district court's judgment denying Warden Johnson's motion for summary judgment, and remand with instructions to fully grant his motion.

3

## II. JURISDICTIONAL STATEMENT

This Court has jurisdiction over Defendants' appeal pursuant to 28 U.S.C. § 1291 because Defendants' notice of appeal (4-ER-635-37) was timely filed on October 30, 2024, within thirty (30) days after the district court entered its order, on September 30, 2024 (1-ER-2-35), partially denying Defendants' motion for summary judgment asserting qualified immunity and Eleventh Amendment immunity. *See* Fed. R. App. P. 4; *see also Behrens v. Pelletier*, 516 U.S. 299, 312-13 (1996) (holding "an order rejecting the defense of qualified immunity" is a "'final' judgment subject to an immediate appeal," which may be raised "at either the dismissal stage or the summary judgment stage"); *Doe v. Regents of the Univ. of California*, 891 F.3d 1147, 1152, (9th Cir. 2018) (holding this Court has "jurisdiction over an interlocutory appeal from the denial of Eleventh Amendment immunity under the collateral order doctrine").

## III. STATEMENT OF THE ISSUES PRESENTED

**A.** Whether the district court erred when denying Warden Johnson's motion for summary judgment on Cardenas-Ornelas's outdoor exercise claim as Warden Johnson is shielded by qualified immunity because Cardenas-Ornelas had no right to outdoor exercise, received the meaningful recreation required by the Eighth Amendment,

4

and any restriction on exercise was due to a genuine emergency seeking to prevent the spread of COVID-19.

**B.** Whether the district court erred when denying Warden Johnson's motion for summary judgment on Cardenas-Ornelas's equal protection claim as Warden Johnson is shielded by qualified immunity because Cardenas-Ornelas was not treated differently from similarly situated offenders in units exposed to COVID-19 and the medical director had reasonable basis for restricting activities not defined as essential, such as outdoor exercise, when attempting to prevent the spread of COVID-19.

**C.** Whether Plaintiff failed to meet his burden of proof that Warden Johnson personally violated a right, clearly established beyond debate, required to overcome Warden Johnson's entitlement to qualified immunity.

D. Whether the district court erred when denying Warden Johnson's motion for summary judgment on Cardenas-Ornelas's State law claims because the district court lacks jurisdiction under the Eleventh Amendment and Nevada law to consider State law claims.

5

## IV.  STATEMENT OF CASE AND PROCEDURAL HISTORY

### A.  NDOC Medical Director Establishes COVID-19 Protocols to Combat an Unprecedented Global Pandemic

In February of 2020, Plaintiff Luis Cardenas-Ornelas was an offender legally incarcerated and housed in Unit 9 at HDSP.  3-ER-196, ECF No. 84-1 at 2, ¶ 4.  In response to the unprecedented COVID-19 pandemic, in February 2020, NDOC added COVID-19 to Medical Directive 231, Communicable Diseases, which provided guidance to custody and medical staff for proper procedure in responding to communicable diseases.  2-ER-55, ECF No. 2, ¶ 2; 3-ER-199, ECF No. 84-1 at 5, ¶ 2.  Beginning in March 2020, the NDOC Medical Director established specific protocols for addressing COVID-19. These policies were fully implemented by the NDOC Director to ensure all NDOC staff and offenders are properly isolated and tested for COVID-19.  3-ER-199, ECF No. 84-1 at 5, ¶ 6.  As warden at HDSP, Calvin Johnson instructed HDSP staff to comply with all protective protocols communicated by the NDOC Medical Director, including COVID-19 protocols.  3-ER-421, ECF No. 84-1 at 227, ¶ 4. Pursuant to those protocols, staff members were tested for COVID-19 every week.  3-ER-422, ECF No. 84-1 at 228, ¶ 9. If any staff member exhibited any COVID-19 symptoms or tested positive for COVID-19, they were immediately sent home if working or told to stay at home if not working.  If any staff member knew that they

6

had come in contact with persons who had contracted COVID-19, they were required to contact the Medical Director for further instruction, and were not permitted to return to work until cleared by the Medical Director. 3-ER-421-22, ECF No. 84-1 at 227-28, ¶ 7. Staff members suspected of contracting COVID-19 were instructed to drive to the gate house, where nursing staff would test them for COVID-19 without entering the institution. They were further instructed to not return until their tests results were negative. 3-ER-421-22, ECF No. 84-1 at 227-28, ¶ 7. Offenders that complained of or were exhibiting any COVID-19 symptoms were isolated and tested for COVID-19. Offenders remained isolated until their tests returned with negative results. 3-ER-422, ECF No. 84-1 at 228, ¶ 8.

Offenders were each given 2 masks to wear. Offenders not wearing their mask would receive a Notice of Charges. 3-ER-422, ECF No. 84-1 at 228, ¶ 10. Staff were required to wear masks and they would receive corrective action and progressive discipline for not wearing their masks. 3-ER-422, ECF No. 84-1 at 228, ¶ 11. Offenders and staff were given various sanitizers to sanitize all common areas of the unit, as well as the Offenders' immediate areas of living space. 3-ER-422, ECF No. 84-1 at 228, ¶ 12.

Warden Johnson had an Emergency Operation Command Center that dealt with any COVID-19 related incidents. The Center ensured

open communication and contact with all of the other NDOC institutions. 3-ER-422, ECF No. 84-1 at 228, ¶ 13 Offenders transferred from other NDOC facilities were put into an isolation unit, tested for COVID-19, and remained isolated until the tests returned with negative results. 3-ER-422, ECF No. 84-1 at 228, ¶ 14. Offenders transported to the doctor, courts, or hospital were tested upon return, and were isolated until the COVID-19 test returned negative. 3-ER-422, ECF No. 84-1 at 228, ¶ 15. Contractors, volunteers, and visitation were stopped to protect the offender population from COVID-19. 3-ER-422, ECF No. 84-1 at 228, ¶ 16.

Warden Johnson met with medical staff weekly to review the best methods for protecting Offenders from COVID-19. 3-ER-422, ECF No. 84-1 at 228, ¶ 17. When conducting inspections at HDSP, Former Director Charles Daniels, Deputy Director Wickham, and Warden Johnson never observed any failures by staff in implementing the medical protocols established by the NDOC Medical Director, including COVID-19 protocols. 3-ER-199, ECF No. 84-1 at 5, ¶ 4; 3-ER-422, ECF No. 84-1 at 228, ¶ 19; 3-ER-426, ECF No. 84-1 at 232, ¶ 4.

## B. Cardenas-Ornelas's Unit Is Properly Quarantined Due to Contact with COVID-19 for Forty (40) Days

On March 18, 2020, Unit 9, Cardenas-Ornelas's Unit, was placed on quarantine because a canteen staff member tested positive for

8

COVID-19, and offender canteen workers assigned to Unit 9 had been in close contact with the staff member. 3-ER-423, ECF No. 84-1 at 229, ¶ 21; 3-ER-269, ECF No. 84-1 at 75. Unit 9 offenders, however, were permitted to work in prison industries two days a week, eight hours a day, which enabled those offenders to continue to earn wages and good time credits. 2-ER-56, ECF No. 93-1 at 3, ¶ 8; 3-ER-268, ECF No. 84-1 at 74; 4-ER-467, ECF No. 32 at 1. Offenders in Unit 9 were able to continue to work in Prison Industries because only offenders in Unit 9 worked in Prison Industries at the same time but could not be given yard time because they would then mix with offenders from other units, thus spreading COVID-19 throughout HDSP. 2-ER-56, ECF No. 93-1 at 3, ¶ 8. Nonetheless, while Unit 9 offenders did not have specific outdoor yard time, they were able exercise out-of-cell by walking from Unit 9 to the Prison Industries Warehouse. After receiving medical clearance on April 27, 2020, Unit 9 offenders were no longer quarantined. 3-ER-423, ECF No. 84-1 at 229, ¶ 21.

### C. Cardenas-Ornelas's Unit Is Properly Quarantined Due to Contact with COVID-19 for Seven (7) Months

By May 18, 2020, three HDSP staff members, but no offenders tested positive for COVID-19. 3-ER-423, ECF No. 84-1 at 229, ¶ 23. On May 19, 2020, however, one offender at HDSP tested positive for COVID-19. 3-ER-423, ECF No. 84-1 at 229, ¶ 23. Due to the offender

9

positive test, and due to the number of correction officers on administrative leave as a result of their contact with people with COVID-19, HDSP was put on lockdown for the protection of offenders and staff alike. 3-ER-423, ECF No. 84-1 at 229, ¶ 23. While in lockdown, however, offenders could still exercise in their cell. 3-ER-423, ECF No. 84-1 at 229, ¶ 23. By May 27, 2020, four offenders tested positive for COVID-19 at HDSP. All of these offenders came from the Clark County Detention Center and were isolated. Offenders at HDSP were isolated for a minimum of twenty days to allow medical staff to monitor for symptoms to determine if any other offenders at HDSP contracted COVID-19. 3-ER-423-24, ECF No. 84-1 at 229-30, ¶ 24; 3-ER-224-25, ECF No. 84-1 at 30-31.

On June 12, 2020, Cardenas-Ornelas submitted informal grievance # 2006-31-03224. In the grievance, Cardenas-Ornelas complained of a lack of "exercise yard time," as a result of the quarantine and lockdown. 3-ER-424, ECF No. 84-1 at 230, ¶ 25; 3-ER-199, 258-373, ECF No. 84-1 at 5, ¶ 5, 64-179. When responding to this grievance at the first level, Warden Johnson found that "Unit 9 and the institution has not been on constant lockdown as alleged in your grievances." 3-ER-269, ECF No. 84-1 at 75. When responding to this grievance at the second level, Deputy Director Wickham found that

10

Cardenas-Ornelas "was answered correctly at the informal and first levels." 3-ER-270, ECF No. 84-1 at 76.

By June 23, 2020, offenders in units who did not have persons suspected of contracting COVID-19 were permitted to resume yard time. 3-ER-424, ECF No. 84-1 at 230, ¶ 26. Unit 9, Cardenas-Ornelas's unit, however, remained in quarantine because offenders in that unit having tested positive for COVID-19. 3-ER-424, ECF No. 84-1 at 230, ¶ 26. Despite being quarantine, offenders in Unit 9 were able to continue working in Prison Industries two days a week for eight hours each day, which enabled those offenders to continue to earn wages and good time credits. 2-ER-56, ECF No. 93-1 at 3, ¶ 8; 4-ER-467, ECF No. 32 at 1. Offenders in Unit 9 were still able to continue to work in Prison Industries because only offenders in Unit 9 worked in Prison Industries at the same time. They, however, still could not be given yard time because they would then mix with offenders from other units, which would then spread COVID-19 throughout HDSP. 2-ER-56, ECF No. 93-1 at 3, ¶ 8. For example, when Unit 9 was quarantined, Cardenas-Ornelas was working in the Hanger Room in Prison Industries. 2-ER-56, ECF No. 93-1 at 3, ¶ 10. The Hanger Room was one of six bays in the Prison Industries Warehouse which provided adequate room for social distancing but was still in an enclosed space which allowed staff

11

to ensure that offenders followed COVID-19 protocols. 2-ER-56, ECF No. 93-1 at 3, ¶ 10.

To further protect offenders in Prison Industries, a fogger device, which sprayed a mist solution was used to kill COVID-19 and other viruses and bacteria, was used between Prison Industry shifts to disinfect the bays where offenders worked. 2-ER-56, ECF No. 93-1 at 3, ¶ 11. Due to the size of the prison yard and because the prison yard is not an enclosed space, the fogger device could not have similarly disinfected the prison yard. 2-ER-56, ECF No. 93-1 at 3, ¶ 11.

Allowing offenders to continue working in Prison Industries while restricting yard time, but providing for exercise in the offender's cell, was justified by the legitimate penological goal of protecting offenders from COVID-19, while still providing offenders with beneficial opportunities which could be maintained under the COVID-19 protocols established by the Medical Director. 2-ER-57, ECF No. 93-1 at 4, ¶ 12. As of June 25, 2020, due to the diligence of NDOC staff, NDOC had the 8th lowest positive COVID-19 infection rate of offenders in the nation. 3-ER-424, ECF No. 84-1 at 230, ¶ 27; 3-ER-229, ECF No. 84-1 at 35.

## D. Despite the Lack of Any Constitutional Violation, Cardenas-Ornelas Wrongly Files a Complaint with the District Court

In a complaint dated December 30, 2020, Cardenas-Ornelas alleged claims concerning NDOC's response to the COVID-19 pandemic,

12

among other claims.  4-ER-577-613, ECF No. 12-1.  On May 11, 2021, the district court screened Cardenas-Ornelas's complaint, and allowed the following claims, among other claims: (1) a claim alleging Defendant Warden Johnson, among other Defendants, violated the Eighth Amendment's and State law's prohibition against cruel and unusual punishment by denying yard time (4-ER-554-55, 574, ECF No. 12 at 14:6 – 15:9, 34:13-15), and (2) a claim alleging Warden Johnson, among other Defendants, violated the federal and state constitution right to equal protection by providing yard time to offenders other than Cardenas-Ornelas (4-ER-555-56, 574, ECF No. 12 at 15:11 – 16:11, 34:13-15).

## E. As Safety Permitted, COVID-19 Restrictions Are Lifted

By at least January 13, 2021, offenders in unit 9D group 2, where Cardenas-Ornelas was housed, were allowed one hour a week yard time.  4-ER-480, 484, ECF No. 20 at 2, 6. Approximately five to six weeks later, Cardenas-Ornelas's Unit was provided three hours of yard time per week.  4-ER-480, ECF No. 20 at 2; 4-ER-501, ECF No. 19-2 at 8.  By July 27, 2021, Cardenas-Ornelas was given 5 hours a week outdoor exercise time, 3 hours per week of gymnasium time, and 25 hours a week tier time for exercise.  4-ER-467, ECF No. 32 at 1.

13

**F.**   **The District Court Wrongly Denies Warden Johnson's Motion for Summary Judgment**

Because Defendants did not violate Cardenas-Ornelas's rights, Defendants moved for summary judgment. 3-ER-170-456, ECF No. 84. After the motion was fully briefed (2-ER-37-168, ECF Nos. 87, 88 & 93), on September 30, 2024, the district court granted the motion with the exception of Cardenas-Ornelas's Eighth Amendment and Equal Protection claims, asserting restrictions to outdoor exercise, against Warden Johnson. 1-ER-35, ECF No. 97 at 34:9-18. As Warden Johnson did not violate Cardenas-Ornelas's rights, much less rights that were clearly established, Defendants timely filed a notice of appeal on October 30, 2024. 4-ER-635-37, ECF No. 100.

## V. STANDARD OF REVIEW

A ruling on a motion for "summary judgment is reviewed *de novo*." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). This Court "may affirm a grant of summary judgment on any ground supported by the record, even one not relied upon by the district court." *Curley v. City of N. Las Vegas*, 772 F.3d 629, 631 (9th Cir. 2014). "Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when, viewing the facts in the light most favorable to the nonmoving party, (1) there is no genuine issue of material fact, and (2) the moving party is entitled to summary judgment as a matter of law." *Arpin*, 261 F.3d at 919. In *Devereaux v.*

14

*Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001), this Court explained that the "party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact for trial." To meet this burden when "the nonmoving party has the burden of proof at trial, the moving party need only point out [by argument] that there is an absence of evidence to support the nonmoving party's case." *Id.*; *see also Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (same). "The moving party need not disprove the other party's case." *Id.* Once the moving party makes this showing, "the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading but must provide affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial." *Devereaux*, 263 F.3d at 1076. "Only admissible evidence may be considered in deciding a motion for summary judgment." *Miller*, 454 F.3d at 987. "Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 988. "To survive a motion for summary judgment, plaintiffs must produce sufficient evidence to establish the existence of every essential element of their case on which they will bear the burden of proof at trial." *River City Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458, 1462 (9th Cir. 1992). "If the nonmoving party fails to make such a showing, summary judgment will

15

be granted because 'a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *In re Brazier Forest Products, Inc.*, 921 F.2d 221, 223 (9th Cir. 1990) quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## VI.  SUMMARY OF ARGUMENT

Warden Johnson is entitled to qualified immunity.  He did not violate Cardenas Ornelas's rights under the Eighth or Fourteenth Amendment.  Cardenas Ornelas has no Eighth Amendment right to outdoor exercise, but only a right to meaningful recreational opportunities, which Cardenas-Ornelas undisputably received, despite the restrictions to yard time required by the unpresented COVID-19 pandemic.  Moreover, the restrictions on yard time were equally applied to all offenders in units that came in contact with COVID-19, which restrictions were reasonably imposed to prevent the spread of COVID-19.

Warden Johnson therefore is protected by qualified immunity because Cardenas-Ornelas cannot establish a violation of a constitutional right, much less a violation of a right clearly established, beyond debate.  Warden Johnson is also protected by Eleventh Amendment immunity with respect to Cardenas-Ornelas's State law claims.  This Court and the district court lack jurisdiction over those

16

State law claims because, pursuant to Nevada law, those claims cannot be brought without naming the State of Nevada. Accordingly, this Court should reverse the district court's judgment denying Warden Johnson's motion for summary judgment, and remand with instructions to the district court to grant Warden Johnson's motion in all respects.

## VII. ARGUMENTS

### A. Warden Johnson Is Entitled to Qualified Immunity under Established Precedent

Warden Johnson is shielded by qualified immunity. In *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011), the Supreme Court held "[q]ualified immunity shields . . . state officials from money damages unless a plaintiff . . . show[s] (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 743. In *Reichle v. Howards*, 566 U.S. 658, 664, (2012), the Supreme Court explained to "be clearly established, a right must be sufficiently clear "that every 'reasonable official would have understood that what he is doing violates that right.'" The "right allegedly violated must be established, not as a broad general proposition,' but in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Id.* at 665. "In other words, existing precedent

17

must have placed the statutory or constitutional question beyond debate." *Id*. at 664. "This 'clearly established' standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can reasonably anticipate when their conduct may give rise to liability for damages." *Id*. "It is not enough that a rule be suggested by then-existing precedent." *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 12 (2021). "A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021). ""Thus, to show a violation of clearly established law, [plaintiff] must identify a case that put [each defendant] on notice that his specific conduct was unlawful." *Id*. Officers "are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). "An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id*. at 105. Accordingly, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. at 104.

18

Cardenas-Ornelas failed to show a violation of a right, much less a clearly established right required to overcome qualified immunity. immunity.

## B. The District Court Erred by Considering Facts that Occurred After Cardenas-Ornelas Submitted His Complaint

When wrongly determining that Warden Johnson violated the Eighth Amendment, the district court also erred by considering facts that supposedly occurred after Cardenas-Ornelas submitted his complaint. In *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 749 (9th Cir. 2006), this Court held that a "complaint is limited to seeking damages arising from acts committed before that time," the time complaint is submitted for filing. In *Wagner v. Prof'l Engineers in California Gov't*, 354 F.3d 1036, 1052 (9th Cir. 2004), this Court explained that "Federal Rule of Civil Procedure 15(d) requires a party to obtain leave of the court to 'serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.'" This Court held that that when the district court properly "(rejected) second amended complaint [that] sought to '"update the facts"' to include allegations which occurred since the date first amended complaint, then the district did not err in limiting the claims to those that happened before the date of the first amended complaint. *Id.* The Court reasoned that a

19

complaint could not encompass claims that plaintiffs could not know when they drafted the complaint. *Id*. at 1551.

Similarly, in *El-Khali v. Usen*, Case No. 21-1140021, 2021 WL 4621828, at *4 (6th Cir. Oct. 7, 2021), the Sixth Circuit held that in "the absence of a supplemental pleading under Fed. R. Civ. P 15(d), [plaintiff] cannot predicate his allegations on events occurring after" the First Amended Complaint. The court reasoned that the "'filing of an action fixes the controversy, and after-occurring events cannot be litigated except by the filing of a supplemental pleading with the court's consent.'" *Id*. quoting Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1051 n.20 (4th ed. April 2021 Update).

Cardenas-Ornelas never filed a supplemental complaint pursuant to Rule 15(d). He submitted only one complaint dated December 30, 2020. 4-ER-577-613, ECF No. 12-1. Accordingly, Cardenas-Ornelas's claims are limited to those that occurred prior to December 30, 2020, when Cardenas-Ornelas signed his complaint. 4-ER-577-613, ECF No. 12-1.

The district court refused to apply this well-established rule, speculating that it did not apply to § 1983 actions. 1-ER-14, ECF No. 97 at 13:21-27. *Borunda v. Richmond*, 885 F.2d 1384, 1389 (9th Cir. 1988), relied upon by the district court, however, says nothing about whether facts that occurred after submitting a complaint may be relied upon to

20

establish a constitutional violation. This Court, however, has routinely applies Rule 15(d) to § 1983 actions. *See Saddozai v. Davis*, 35 F.4th 705, 709 (9th Cir. 2022); *Howard v. City of Coos Bay*, 871 F.3d 1032, 1040 (9th Cir. 2017); *Jackson v. Fong*, 870 F.3d 928, 935 (9th Cir. 2017); *Rhodes v. Robinson*, 621 F.3d 1002, 1007 (9th Cir. 2010).

In *Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 876, (6th Cir. 2024), the Sixth Circuit "limit[ed] [its] review to the events that happened before October 22, 2019," the date when the plaintiff "filed her operative complaint" asserting claims under § 1983, even though these "later actions" "continued" after filing the complaint. The Court reasoned that "the filing of the operative complaint fixes the controversy as of that date, and federal courts will not consider post-complaint factual developments." *Id.* Likewise, in *Triplett v. Banks*, Case No. 19-60770, 2021 WL 5444751, at *2 (5th Cir. Nov. 19, 2021), the Fifth Circuit refused to consider events offered in support of an Eighth Amendment claim which occurred "after [a prisoner's] complaint was filed."

The district court therefore erred when considering events after December 30, 2020, when Cardenas-Ornelas submitted his complaint. At most, Cardenas can establish that he was deprived of outdoor exercise for the forty (40) days between March 18, 2020 and April 27, 2020; and the seven (7) months between May 18, 2020 and December

30, 2020, which was necessary due to the unprecedented nature of the COVID-19 pandemic.  3-ER-423, ECF No. 84-1 at 229, ¶¶ 21- 23.  The district court cited no authority establishing that the loss of outdoor exercise, under standard prison conditions, for such a short duration, when faced with unprecedented emergency due to COVID-19 violated the Eighth Amendment.[1] 1-ER-13, 23, ECF No. 97 at 12:23-25, 22:18-

---

[1] None the cases cited by the district court, which found an Eighth Amendment violation, involved any type of emergency, and therefore are readily disguisable from the facts in this case involving an unpresented global emergency caused by COVID-19. *See Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) (holding that the denial of outdoor exercise for "four and one-half years," with no indication of an emergency, violated the Eighth Amendment  when "the inmates were held "in continuous segregation, spending virtually 24 hours every day in their cells with only meager out-of-cell movements and corridor exercise," had "minimal" contact with other persons, and were offered no "affirmative programs of training or rehabilitation"); *Allen v. Sakai*, 48 F.3d 1082, 1086-88 & n.1  & n.5 (9th Cir. 1994) (holding that receiving only 45 minutes of outdoor exercise in six weeks due to "inconsequential logistical concerns," with no indication of an emergency, may violate the Eighth Amendment when the inmate was "permitted out of his cell only weekly," and was confined in "the harshest conditions of confinement found"); *Toussaint v. Yockey*, 722 F.2d 1490, 1492-93 (9th Cir. 1984) (holding that the denial of outdoor exercise "for over one year," with no indication of an emergency, may violate the Eighth Amendment when "inmates were confined to their cells for as much as 23 ½ hours a day," "were in continuous segregation, spending virtually all their time in their cells; their contact with other persons was minimal; they lived in an atmosphere of fear and apprehension; and they were confined under degrading conditions without affirmative programs of training or rehabilitation").

19. In fact, *LeMaire v. Maass*, 12 F.3d 1444, 1457-58 (9th Cir. 1993), relied upon by the district court, held that being "deprived of outside exercise for most of a five-year period of incarceration" due to "serious and legitimate security concerns" did ***not*** violate the Eighth Amendment because the inmate "still can exercise within his cell," including "low and non-impact aerobic exercise." The loss of outdoor exercise for seven (7) short months due to the "serious and legitimate" safety concerns caused by the unprecedented COVID-19 pandemic certainly does not violate the Eighth Amendment when compared with the five (5) years in *LeMaire*. When the review is properly limited to the events that happened before December 30, 2020, Cardenas-Ornelas has failed to show a violation of clearly established law, beyond debate.

### C. Warden Johnson is Entitled to Qualified Immunity Because He Did *NOT* Violate the Eighth Amendment

The Eighth Amendment requires prison officials to provide "humane conditions of confinement" with due regard for inmate health and safety. *Farmer v. Brennan*, 511 U.S. 825, 832, 837 (1994). To show a violation, an inmate must first "objectively" establish that he was "incarcerated under conditions posing a substantial risk of serious harm." *Id*. at 834. Second, the inmate must establish that the official "was subjectively aware of the risk," but "deliberate indifferen[t] to [an] inmate['s] health or safety." *Id*. at 829, 834.

23

For a risk to be "objectively" "substantial" under the first prong, an inmate must show more than a risk of serious harm which is merely possible. *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Accordingly, to show an objectively substantial risk of serious harm, the inmate must establish "a 'strong likelihood' rather than a 'mere possibility'" of harm. *Williams v. Wood*, Case No. 06–55052, 223 Fed. App'x 670, 671 (9th Cir. 2007) (holding that "speculative and generalized fears of harm . . . do not rise to a sufficiently substantial risk of serious harm").

Under the second "subjective" prong, "deliberate indifference" can only be established if the "prison official . . . knows of and disregards an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837. "[D]eliberate indifference entails something more than mere negligence." *Id*. at 835. The "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. A prison "official's failure to alleviate a significant risk that he should have perceived but did not" does not establish deliberate indifference. *Farmer*, 511 U.S. at 838. "[F]ederal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which [the courts] are ill-equipped." *Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir. 2003).

Contrary to the district court's conclusion, the mere lack of outdoor exercise does not pose an objective risk of serious harm necessary to violate the Eighth Amendment. In *Norbert v. City & Cnty. of San Francisco*, 10 F.4th 918, 929 (9th Cir. 2021), this Court declared: "[W]e have never held that all deprivations of outdoor exercise are per se unconstitutional." To the contrary, this Court has "not imposed a rigid requirement of outdoor exercise regardless of the other opportunities for physical exercise that a correctional institution afford." *Id*. This Court held that when the plaintiff fails to establish that his "his movements were restricted to the point that he is unable to exercise inside his cell or in jail common areas," then "the plaintiff failed to state a sufficiently serious constitutional deprivation." *Id.* at 932. This Court ruled "the Constitution requires jail officials to provide outdoor recreation opportunities, *or otherwise meaningful recreation*, to prison inmates." *Id*. (emphasis in the original). This Court viewed favorably that the "Fifth Circuit rejected a claim" brought by a "maximum-security inmate," alleging an Eighth Amendment violation, "based on his confinement for more than seven years without outdoor exercise and sunshine." *Id*. at 932, citing *Wilkerson v. Maggio*, 703 F.2d 909, 911-12 (5th Cir. 1983). This Court noted the "Fifth Circuit . . . 'conclude[d] . . . that one hour a day of exercise provided on the indoor tier satisfied the constitutional minimum.'" *Norbert*, 10 F.4th at 932.

25

Cardenas-Ornelas does not allege that the lack of outdoor exercise caused him any harm at all, much less provide objective evidence of a risk of harm, nor could he. *See Norbert*, 10 F.4th at 934 (rejecting condition of confinement claim when inmate failed to establish that lack of outdoor exercise caused harm). Despite the lockdown due to COVID-19, Cardenas-Ornelas concedes that he was able to exercise in his cell. 3-ER-196, ECF No. 84-1 at 3, ¶ 6; 3-ER-424, ECF No. 84-1 at 230, ¶ 23-26; 3-ER-430, ECF No. 84-1 at 236, ¶ 8; 3-ER-449-50, ECF No. 84-1 at 255-56, ¶ 6. Cardenas-Ornelas also concedes that he was not confined in his cell each and every day while on lockdown. Cardenas-Ornelas admits that even when quarantined, he was permitted to leave his cell, walk to and from the Prison Industries Warehouse, where he had the privilege[2] to work for eight hours a day, two days a week, so that he could continue to earn wages and good time credits. 2-ER-56, ECF No. 93-1 at 3, ¶ 8; 3-ER-268, ECF No. 84-1 at 74; 4-ER-467, ECF No. 32 at 1. This Court has repeatedly emphasized that "otherwise meaningful recreation" could substitute for outdoor exercise, such as "affirmative

---

[2] The district court appears to imply that working in prison industries was some sort of punishment. To the contrary, as set forth in NDOC AR 525.01, working in prison industries is a privilege provided to offenders that meet set criteria, including "having no major disciplinary violations in the previous 6 months." Pursuant to NDOC AR 854.02, offenders working in prison industries are provided "wages" and "occupational training."

programs of training or rehabilitation." *Norbert*, 10 F.4th at 923, 929-34. As Cardenas-Ornelas could exercise in his cell and admits he was provided sixteen hours of meaningful out-of-cell time receiving training and rehabilitation when working in prison industries, the lack of outdoor exercise did not cause Cardenas-Ornelas any harm. Cardenas-Ornelas certainly cannot establish the "substantial" and "objective intolerable risk of serious harm" required to establish an Eighth Amendment violation. *Farmer*, 511 U.S. at 837, 846.

The district court likewise erred when determining that Warden Johnson knew that the lack of outdoor exercise caused a serious risk of harm to Cardenas-Ornelas. In *Norwood v. Vance*, 591 F.3d 1062, 1065, 1068-70 (9th Cir. 2010), this Court held that prison officials could not know that a prison faced a serious risk of harm, despite denying an inmate exercise for more than twelve months (in increments of three, three, four and half, and two months) during a two-year period, when "there was a greater risk of harm from allowing outdoor exercise" as the lockdowns were instituted to "keep inmates safe" from "a genuine emergency." This Court noted that other courts have appropriately found a lack of deliberate indifference despite a denial of "outdoor exercise for ten months." *Id*. at 1070. The Court reasoned that '[o]fficials must balance th[e] imperative [to keep inmates safe] against

other obligations that our laws impose, such as providing outdoor exercise." *Id*. at 1069.

The district court ignored that the COVID-19 pandemic was a genuine life and death emergency, the likes of which has never been seen before. A lockdown was reasonably imposed at HDSP to protect offenders from COVID-19, once an offender tested positive for COVID-19. 3-ER-423, ECF No. 84-1 at 229, ¶ 23. Offenders in units that were not exposed to COVID-19 and that did not display COVID-19 symptoms, were given yard time a little more than a month later. 3-ER-424, ECF No. 84-1 at 230, ¶ 26. Unit 9, where Cardenas-Ornelas was house, was quarantined because of their exposure to COVID-19. 3-ER-424, ECF No. 84-1 at 230, ¶ 26. Even if Cardenas-Ornelas had not been permitted to work in prison industries and remained on lockdown due to Unit 9 offender's exposure to COVID-19, from May 20, 2020, when the lockdown began, until he submitted his complaint on December 30, 2020, which is absolutely not the case as admitted by Cardenas-Ornelas, that seven months and ten days is still far less than the ten months which the Court in *Norwood* found to be reasonable when inmate safety was at risk due to a genuine emergency. Indeed, Cardenas-Ornelas's lack of any adverse effects from COVID-19 can be directly attributed to the proactive measures taken at HDSP to protect offenders. If these lockdown procedures had not been instituted,

28

Cardenas-Ornelas would most certainly be suing Defendants for the failure. Warden Johnon therefore could not know that the safety protocols were putting offenders at risk because those protocols were put in place to protect offenders from a danger far worse than a lack of outdoor exercise. 3-ER-209-56, ECF No. 84-1 at 15-62.

The district court wrongly concluded that because Cardenas-Ornelas was afforded the privilege of working in Prison Industries, so that he could earn wages and good time credits, that somehow establishes a material dispute of fact as whether he should also have been given yard time. ECF No. 97 at 14:21-24. First, such a conclusion ignores this Court's holding in *Norbert* that "affirmative programs of training or rehabilitation," such as working in prison industries, serves as a "meaningful" substitute for outdoor exercise. 10 F.4th at 923, 929-34. Because Cardenas-Ornelas was provided this meaningful opportunity, along with the ability to exercise in his cell, the Eighth Amendment does not also require outdoor exercise.

Second, and just and important, in *Norwood*, this Court expressly counseled that when "a lockdown was in response to a genuine emergency, and restrictions were eased as the prison administration determined that the emergency permitted, we may not lightly second-guess officials' expert judgments about when exercise and other programs could safely be restored." 591 F.3d at 1069. The Court

29

reasoned that even if "prison officials . . . err[ed] on the side of caution by maintaining lockdowns for longer than necessary," "when it comes to matters of life and death, erring on the side of caution is a virtue." *Id*. The Court concluded that "when balancing the obligation to provide for inmate and staff safety against the duty to accord inmates the rights and privileges to which they are entitled, prison officials are afforded wide-ranging deference." *Id*.

Here, prison officials balanced the risks of the COVID-19 pandemic against the privileges that had previously been provided to offenders and determined that while yard time would not comport with COVID-19 protocols, offenders could still be afforded the opportunity to work in Prison Industries and earn wages and good time credits. 2-ER-55-57, ECF No. 93-1 at 2-4, ¶¶ 5 – 12. The district court ignored that offenders in Unit 9, such as Cardenas-Ornelas, were still able to continue to work in Prison Industries because only offenders in Unit 9 worked in Prison Industries at the same time, unlike yard time where offenders mixed with offenders from other units. 2-ER-56, ECF No. 93-1 at 3, ¶ 8. Additionally, the level of supervision and affirmative measures to protect offenders from COVID-19 were simply not available in the yard, while Prison Industries had a space where COVID-19 protocols could be enforced, such as not mixing quarantined offenders with non-quarantined offenders, and where remedial measures, such as

30

a fogger device used to kill COVID-19, could be implemented, which could not be implemented in the yard due to its size and because it was not an enclosed space. 2-ER-56-57, ECF No. 93-1 at 3-4, at ¶¶ 8 – 12. When determining deliberate indifference, the district court, in violation of this Court's holding in *Norwood*, improperly second-guessed the NDOC Medical Director's expert judgments about how to best implement COVID-19 protocols to protect offenders, and when outdoor exercise and other programs could safely be restored.[3] Notwithstanding the district court's contrary insinuations, it "is well established that

---

[3] Although outside of Cardenas-Ornelas's complaint, yard time began to be restored, as safety permitted, shortly after Cardenas-Ornelas filed his complaint. By at least January 13, 2021, inmates in unit 9D group 2, where Cardenas-Ornelas was housed, were allowed one hour a week yard time. 4-ER-480, 484, ECF No. 20 at 2, 6. Approximately five to six weeks later, Cardenas-Ornelas's Unit was provided three hours of yard time per week. 4-ER-480, ECF No. 20 at 2; 4-ER-501, ECF No. 19-2 at 8. By July 27, 2021, Cardenas-Ornelas was given 5 hours a week outdoor exercise time, 3 hours per week of gymnasium time, and 25 hours a week tier time for exercise. 4-ER-467, ECF No. 32 at 1. Even if these after-the-complaint facts could be considered, the district court erred because, as held in *Norwood*, when a "lockdown was in response to a genuine emergency, and restrictions were eased as the prison administration determined that the emergency permitted," the district court should "not lightly second-guess officials' expert judgments about when exercise and other programs could safely be restored," as "when it comes to matters of life and death, erring on the side of caution is a virtue." 591 F.3d at 1069.

31

judges and juries must defer to prison officials' expert judgments." *Norwood*, 591 F.3d at 1066.

As Cardenas-Ornelas failed to establish either the objective or subjective prong required to establish his condition of confinement claim, and both are required, he cannot establish an Eighth Amendment violation. This Court should therefore reverse the district court's judgment to the extent that it denies Warden Johnson's motion for summary judgment, and remand with instructions to grant Warden Johnson's motion in full.

### D. Warden Johnson Is Entitled to Qualified Immunity Because He Did *NOT* Violate Cardenas-Ornelas's Right to Equal Protection

Contrary to the district court's conclusion, Cardenas-Ornelas offered no evidence Warden Johnson violated Cardenas-Ornelas's equal protection rights. In *Seaplane Adventures, LLC v. Cnty. of Marin*, 71 F.4th 724, 729 (9th Cir. 2023), this Court held that to "succeed on a 'class of one' equal protection claim, [plaintiff] must demonstrate the [defendants] "(1) intentionally (2) treated [plaintiff] differently than other similarly situated [individuals or groups], (3) without a rational basis." The court explained that plaintiff "must show that a rational trier of fact could find for [plaintiff] on all three prongs of the 'class of one' claim to preclude a grant of summary judgment" and held that when the plaintiff fails to establish one prong "it is not necessary to

32

analyze the other prongs." *Id*. at 729-30. The Court reasoned that "health officials traditionally have broad discretion, . . . to take actions to stem the transmission of a contagious disease." *Id*. at 730. This discretion is all the more important in the prison context. *See Turner v. Safley*, 482 U.S. 78, 89 (1987).

Here, Cardenas-Ornelas was not treated differently from any similarly situated offenders. In *SmileDirectClub, LLC v. Tippins,* 31 F.4th 1110, 1123 (9th Cir. 2022), this Court held to be similarly situated, the "plaintiff must be similarly situated to the proposed comparator in all material respects." The district court erred because it did not differentiate between offenders in units with an offender that contracted COVID-19, and those that did not. Once a member of Unit 9 contracted COVID-19, Cardenas-Ornelas's unit, he was no longer similarly situated in all material respects with offenders in non-COVID-19 units who were provided yard time. The undisputed evidence establishes that all offenders, including Cardenas-Ornelas, were restricted from accessing the yard when any offender in that unit had contracted COVID-19. 3-ER-424, ECF No. 84-1 at 230, ¶ 26. Cardenas-Ornelas has no evidence that he was treated differently than the other offenders who were in units exposed to COVID-19, much less that Warden Johnson intentionally treated Cardenas-Ornelas differently. *See McCleskey v. Kemp*, 481 U.S. 279 (1987) (holding that to establish

discrimination under the Equal Protection Clause, the plaintiff "must prove that the decisionmakers in his case acted with discriminatory purpose"); *Iqbal*, 556 U.S. at 676-77 (holding "purposeful discrimination requires more than "intent as volition or intent as awareness of consequences," but "involves a decisionmaker's undertaking a course of action 'because of,' not merely 'in spite of,' the action's adverse effects upon an identifiable group").

Moreover, the NDOC Medical Director had a rational basis for not allowing Cardenas-Ornelas to access the yard when a member of his unit tested positive for COVID-19. NDOC was attempting to prevent the spread of COVID-19, which endangered offenders' health. 3-ER-424, ECF No. 84-1 at 230, ¶ 26; 3-ER-209-56, ECF NO. 84-1 at 15-62. In *Seaplane*, the Ninth Circuit explained that the "rational basis prong of a 'class of one' claim turns on whether there is a rational basis for the distinction, rather than the underlying government action." 71 F.4th at 730. The "law need not be in every respect logically consistent with its aims to be constitutional," it "is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Id.* The Court held that the "rational basis is abundantly clear: to lower transmission of COVID-19 by restricting activities not defined as essential." 71 F.4th at 731. The court reasoned when "actions are undertaken during a time of great

34

uncertainty with a novel disease, medical uncertainties afford little basis for judicial responses . . . in areas fraught with medical and scientific uncertainties." *Id.* at 730. Even if Cardenas-Ornelas could show that the NDOC Medical Director "could have acted differently" with "the benefit of hindsight and knowledge of facts discovered by scientists, doctors, and health officials after the crisis had subsided," which he cannot do, the Medical Director did not "need to act perfectly to establish a rational basis."

Here, the NDOC Medical Director rationally attempted to prevent the spread of COVID-19 by restricting yard time when an offender from the same unit had come into contact with COVID-19. Just as in *Seaplane*, restricting these non-essential activities to prevent the spread of COVID-19 clearly satisfies the rational basis test. *See Norbert*, 10 F.4th at 928-34 (rejecting argument that "outdoor exercise" was essential).

As Cardenas-Ornelas cannot establish any of the three required prongs, Warden Johnson did not violate Cardenas-Ornelas's equal protection rights. This Court should therefore reverse the district court's judgment denying Warden Johnson's motion for summary judgment, and remand with instructions to grant the motion in all respects.

35

### E.   Warden Johnson Did *NOT* Personally Participate in Any Constitutional Violation

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court ruled that because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Cardenas-Ornelas cannot establish that Warden Johnson violated the Constitution through his own individual action.   Instead, Warden Johnson was merely following the policies and procedures set forth by the NDOC Medical Director.   3-ER-421-22, ECF No. 84-1 at 227-28, ¶¶ 4-18.  Warden Johnson was required to follow these policies as he is not a doctor and had no basis for charting a course different from that set by the Medical Director.

In *Peralta v. Dillard*, 744 F.3d 1076, 1086-87 (9th Cir. 2014), this Court held that that administrators were not deliberately indifferent to inmate's serious medical needs because they did not were entitled to rely on the medical opinions of medical providers who had "already signed off on the treatment plan."   This Court reasoned that such administrators were not required to "second guess" medical providers medical judgments, and therefore the inmate could not show that the administrators "actually knew that his action put inmates at risk" necessary to establish "a wanton infliction of unnecessary pain" in violation of the Eighth Amendment.  *Id*.

36

Here, Warden Johnson is not a doctor and therefore he was not required to second guess the Medical Director's judgment on how best to respond to the COVID-19 pandemic. Warden Johnson could not know that his actions violated any constitutional right because he properly relied on the Medical Director's judgment on how best to respond to the pandemic and protect offenders.

Accordingly, the district court erred when denying Warden Johnson's motion for summary judgment because his individual actions did not violate the Constitution. This Court should therefore reverse the district court's judgment denying Warden Johnson's motion for summary judgment, and remand with instructions to grant his motion in all respects.

### F. Cardenas-Ornelas Failed to Meet His Burden of Establishing a Violation of Clearly Established Law, Beyond Debate, Required to Overcome Qualified Immunity

Neither Cardenas-Ornelas, nor the district court has cited any Supreme Court or circuit authority which squarely governs the facts of this case and would, beyond debate, clearly establish that Warden Johnson violated the Eighth Amendment or Fourteenth Amendment. In *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000), this Court held that resolving dispositive motions "based on qualified immunity" requires conducting an "individualized analysis . . . ,

37

examining each of the . . . elements of the alleged" cause of action, when determining whether the law was clearly established. Cardenas-Ornelas, however, cannot point to any established precedent establishing that he meets even a single element of his Eighth Amendment or Fourteenth Amendment claim.

Instead, the district court relied upon generic case law and ignores that NDOC was faced with an unprecedented global pandemic which required NDOC to restrict Cardenas-Ornelas's yard time to prevent the spread of COVID-19. In *Carley v. Aranas*, 103 F.4th 653 (9th Cir. 2024)*,* this Court rejected such reliance, recognizing "the Supreme Court 'has repeatedly told courts—and the Ninth Circuit in particular— not to define clearly established law at a high level of generality.'" *Id*. at 660–61, quoting *Kisela*, 584 U.S. at 104. This Court held "a plaintiff must prove that precedent on the books at the time the officials acted would have made clear to them that their actions violated the Constitution." *Carley*, 103 F.4th at 660-61.

No court has held that a prison official violates the Eighth Amendment by restricting yard time to prevent the spread of a global pandemic. To the contrary, this Court declared: "[W]e have never held that all deprivations of outdoor exercise are per se unconstitutional." *Norbert*, 10 F.4th at 929. This Court has refused to "impose[]a rigid requirement of outdoor exercise," especially when the inmate has other

38

"meaningful" substitutes, such working in prison industries, which was provided to Cardenas-Ornelas. *Id*. at 923, 929-34.

Similarly, no Court has held that a prison official violates the equal protection clause of the Fourteenth Amendment by not providing yard time to an inmate housed in a prison unit where another inmate contacted COVID-19, even though inmates in other units that had not contracted COVID-19 were provided yard time. To the contrary, this Court has declared when "actions are undertaken during a time of great uncertainty with a novel disease, medical uncertainties afford little basis for judicial responses . . . in areas fraught with medical and scientific uncertainties." *Seaplane*, 71 F.4th at 730.

Moreover, no court has held that a warden, who has no medical training and had no control over yard time restrictions imposed by the prison medical director, personally patriciates in constitutional violations based on those restrictions. To the contrary, in *Peralta*, this Court rejected all such claims. 744 F.3d at 1082-84, 1086-88.

Cardenas-Ornelas therefore cannot establish a constitutional violation, much less meet his burden of showing a violation that was clearly established, beyond debate. *See Carley*, 103 F.4th at 659-60 (holding the "burden of proof rests" with the [inmate] to prove a both that "the officials conduct violated a constitutional right," and that the "violation was clearly established at the time of the violation").

39

Accordingly, Warden Johnson is shielded by qualified immunity, and the district court erred when denying his motion for summary judgment. This Court should therefore reverse the district court's judgment, because Warden Johnson is shielded by qualified immunity.

### G. The District Court and this Court Lack Jurisdiction to Consider Cardenas-Ornelas's State Law Claims

To the extent Cardenas-Ornelas alleges state law claims (ECF No. 12 at 34:13-15, 35:7-11), this Court and the district court lack jurisdiction to consider those claims because they are barred by sovereign immunity recognized by the Eleventh Amendment. In *Edelman v. Jordan*, 415 U.S. 651, 678 (1974), the Supreme Court held the "Eleventh Amendment declares a policy and sets forth an explicit limitation on federal judicial power of such compelling force that this Court will consider the issue arising under this Amendment in this case even though urged for the first time in this Court." While the State of Nevada has waived sovereign immunity with respect to certain State causes of action, the State has conditioned the waiver on meeting the requirements in NRS §§ 41.031-41.0337. Pursuant to NRS 41.031 and NRS 41.0337, a "plaintiff must name the State as a party to any state tort claims" against state employees and entities in order to invoke the waiver of sovereign immunity. *Craig v. Donnelly*, 135 Nev. 37, 40, 439 P.3d 413, 415, (Nev. App. 2019). Cardenas-Ornelas has not and could

not name the State of Nevada in this action, because Nevada has explicitly refused to waive its immunity to suit in federal court under the Eleventh Amendment. NRS 41.031(3); *see also O'Connor v. State of Nev.*, 686 F.2d 749, 750 (9th Cir. 1982) (holding that "Nevada has explicitly refused to waive its immunity to suit under the Eleventh Amendment").

Because the State of Nevada must be named as a party under NRS 41.031 and NRS 41.0337, but is immune from suit in federal court, the district court lacks jurisdiction over state law claims against state actors. *See Hirst v. Gertzen*, 676 F.2d 1252, 1264 (9th Cir. 1982) (holding that where state law deemed state governmental entities indispensable parties in a state law claim against a state employee, the federal court had no jurisdiction over the state law claim because the court had no jurisdiction over the indispensable party); *see also Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121, 124 (1984) (holding that "federal courts lack jurisdiction" over a "claim that state officials violated state law in carrying out their official responsibilities" because it "is a claim against the State that is protected by the Eleventh Amendment" and it "is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law"). Without jurisdiction, the district court erred by not dismissing

41

Cardenas-Ornelas's state law claims.[4] *See Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 324 (2008) (holding that courts "bear an independent obligation to assure . . . that jurisdiction is proper ***before*** proceeding to the merits of a claim"); *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (holding "[f]ederal courts

---

[4] Even if the Nevada had waived Eleventh Amendment immunity, so it could be named in this action against Warden Johnson as required by NRS 41.031 and NRS 41.0337, it would make no difference. First, Cardenas-Ornelas has no private right of action under the Nevada Constitution based on claims asserting cruel and unusual punishment clause or equal protection clause. *See Mack v. Williams*, 138 Nev. Adv. Op. 86, 522 P.3d 434, 444-50 (2022) (adopting the California Supreme Court's test in *Katzberg v. Regents of Univ. of California*, 58 P.3d 339 (Cal. 2002) to determine whether a constitutional provision contains a private right of action); *Burnham v. Pub. Employees' Ret. Sys.*, 208 Cal. App. 4th 1576, 1588, 146 Cal. Rptr. 3d 607, 615–16 (2012) (relying on *Katzberg* to hold that the "equal protection clause" in the California Constitution does not contain a private right of action for damages); *Giraldo v. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 253-57, 85 Cal. Rptr. 3d 371, 388-91 (2008) (applying the *Katzberg* test to hold that the "[c]ruel or unusual punishment" clause in California's Constitution does not contain a private right of action). Second, even if such private rights of action were recognized, those state law claims would fail for the same reasons as Cardenas-Ornelas's federal claims. *See In re Candelaria*, 126 Nev. 408, 416, 245 P.3d 518, 523 (2010) (holding the "standard . . . under the equal protection clause of the state constitution is the same as the federal standard"); *Naovarath v. State*, 105 Nev. 525, 532, 779 P.2d 944, 949 (1989) (relating "the eighth amendment of the Constitution of the United States and article 1, section 6 of the Constitution of the State of Nevada," because "both of which proscribe cruel and unusual punishment").

are always under an independent obligation to examine their own jurisdiction," and "may not entertain an action over which it has no jurisdiction").

## VIII. CONCLUSION

For the reasons set forth above, this Court should reverse the district court's judgment to the extent it denies Defendant Warden Johnson's motion for summary judgment, and remand with instruction to the district court to grant Warden Johnson's motion for summary judgment in all respects.

Respectfully submitted March 31, 2025,

AARON D. FORD
Attorney General
By:   */s/ Chris Davis*
Chris Davis (Bar No. 6616)
Senior Deputy Attorney General
*Attorneys for the Defendants-Appellants*

## STATEMENT OF RELATED CASES

The undersigned attorney asserts that I am unaware of any related cases pending in the Ninth Circuit Court of Appeals.

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and 9th Cir. R. 32-1, the attached brief is proportionately spaced, has a typeface of 14 points or more and contains 8904 words.

Respectfully submitted March 31, 2025.

AARON D. FORD
Attorney General

By:   */s/ Chris Davis*
Chris Davis (Bar No. 6616)
Senior Deputy Attorney General
*Attorneys for Defendants-Appellants*

44

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANT'S-APPELLANT'S OPENING BRIEF** and **DEFENDANTS – APPELLEES' SUPPLEMENTAL EXCERPTS OF RECORD** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate electronic filing system on March 31, 2025.

Participants in the case who are registered users will be served by the appellate electronic filing system as follows:

Aaron Littman
UCLA School of Law
Prisoners' Rights Clinic
385 Charles E. Young Drive, E.
Los Angeles, CA 90095-1458
littman@law.ucla.edu

Samuel Weiss, Esq.
RIGHTS BEHIND BARS
416 Florida Avenue NW, #26152
Washington, D.C. 20001-05069
sam@rightsbehindbars.org

*Attorneys for Plaintiff-Appellee*

*/s/ Kimalee Goldstein*
An employee of the office
of the Nevada Attorney General

45